IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

CLINT SCOTT JEWETT,

      Plaintiff,

v.

WELD COUNTY SHERIFF'S DEPARTMENT,
JOHN COOKE, the Sheriff of Weld County, Colorado; and
JOHN DOES NUMBERS 1-10, individually and in their official capacities,

      Defendants.

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**
_____

      Plaintiff Clint Scott Jewett ("Jewett") submits the following complaint against defendants.

### PARTIES

1.      Clint Scott Jewett is an individual with an address of 2842 16th Avenue in Greeley, Colorado.

2.      At all relevant times Defendant John Cooke ("Cooke") was the duly elected and acting Sheriff of Weld County, Colorado and the head of all aspects of Defendant Weld County Sheriff's Department and its operations.

3.      Defendant Weld County Sheriff's Department ("Sheriff's Department") is a government agency created under the laws of the State of Colorado.  The Sheriff's Department is charged by statute with preservation of the peace and the maintenance of law and order in Weld County, Colorado.

4.      Defendants John Does Numbers 1-10 were at all pertinent times herein employees of the Sheriff's Department.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4).

6. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391 in that all defendants are residents of this judicial district.

## GENERAL ALLEGATIONS

7. On July 8, 2004 Jewett was admitted to the Sheriff's Department's work release program at the Centennial Residential Facility ("Centennial").

8. One day in the latter part of September 2004 Jewett was sitting in the day room at Centennial. Another inmate, Frank Zamora ("Zamora"), came into the day room with meat and cheese he had purchased at a nearby Safeway. Bringing outside food into the facility is a violation of Centennial's regulations. Zamora told Jewett that he was going to put the meat and cheese in the refrigerator and put Jewett's name on it. Jewett told Zamora not to do this, because bringing in outside food was against the rules.

9. In late September or early October of 2004, Jewett was instructed to clean certain bathrooms at the Centennial facility. Zamora told Jewett to "slip a couple of bucks" to the trustee in exchange for cleaning the bathrooms. Jewett refused and cleaned the bathrooms himself.

10. Apparently, the other inmates believed Jewett had informed on them about these rules infractions, and after this time they treated Jewett with contempt. Jewett often overheard the other inmates, especially Ramon Eusebio Gurule ("Gurule") saying words to the effect of "We're going to get him" or "We're going to take him out one of these days." When he was in the day room he overheard other inmates saying, "There's the snitch; there's the snitch!"

11. The other inmates also began throwing pennies at Jewett while he was lying in his bunk at night.

12. On or about October 3, 2004 Jewett told John Doe No. 1 (hereinafter

referred to as "Nagler") that the other inmates were harassing him and that he wanted a change in bunk assignment. Nagler declined Jewett's request.

13. One evening Jewett told John Doe No. 2 (hereinafter referred to as "Bill") and John Doe No. 3 (hereinafter referred to as "O'Neal") that the other inmates were throwing pennies at him. Neither Bill nor O'Neal took any action other than telling Jewett to tell the next shift supervisor.

14. That same evening Jewett told John Doe No. 4 (hereinafter referred to as "Soto") that the other inmates were throwing objects at him. She told Jewett not to worry about it.

15. At least a dozen times Jewett told staff members at Centennial that the other inmates were harassing him and that he was in fear for his safety and believed the other inmates intended to assault him, and pleaded with them to help him. No Centennial staff member ever took any action whatsoever in response to Jewett's pleas. Jewett was told that there was "nothing we can do" until after "something happens."

16. In the early morning hours of October 16, 2004 Jewett was sleeping in his bunk. He awoke to find Gurule and the inmate from Bunk W-12 (hereinafter referred to as "David") standing over him. Gurule said, "Hey, you're the rat." Gurule and David told Jewett they were going to "take him out." Bill came in and saw Gurule and David standing over Jewett's bunk and told them to get back into their bunks.

17. At this time Jewett asked Bill if he could go to the restroom. Bill said yes and Jewett went to the restroom. David came into the restroom with Jewett and began threatening him again, saying "we're going to get you." Bill came in and told David to get back to his bunk.

18. After using the restroom Jewett went back to his bunk. A short time later Gurule and David approached Jewett's bunk again. Bill came in and told David to pack his belongings. David then left the room and Bill followed him, leaving Jewett alone with Gurule.

3

19. Gurule then came up to Jewett; Jewett attempted to get up and put his shoes on so he could run away. Before he could do so Gurule struck him in the jaw with such force that his head snapped back and struck the next bunk over.

20. As a result of this assault Jewett suffered severe injuries, including, but not limited to, injury to his brain. Jewett's injuries resulted in an extensive stay in the Northern Colorado Medical Center.

21. But for the policies and procedures of defendant Cooke and/or the Sheriff's Department and the conduct of the other defendants, Jewett would not have been injured.

22. All of the acts and omissions complained of herein were undertaken by the defendants under color of state law and the regulations, policies, customs, and procedures of Cooke and/or the Sheriff's Department.

## FIRST CLAIM FOR RELIEF
(42 U.S.C. Section 1983 – Eighth Amendment Violation)

23. Plaintiff restates the allegations contained in paragraphs 1 - 22, above, as if fully set forth herein.

24. The defendants had an obligation to take reasonable measures to ensure Jewett's safety.

25. Pursuant to the policies and procedures of Defendant Cooke and/or the Sheriff's Department, the defendants failed and refused to take such measures. Specifically, Jewett warned the Centennial staff numerous times that he was in fear for his safety. These warnings were not the result of undifferentiated and ungrounded fears. Instead, the warnings were based upon specific facts and circumstances that caused Jewett reasonably to fear for his safety, and Jewett told the Centennial staff about these specific facts and circumstances. After receiving these very specific warnings, the Centennial staff took absolutely no action to protect Jewett. Furthermore, instead of sending David and Gurule back to jail for threatening and harassing Jewett, the

Centennial staff took no action.  As a direct result of the Centennial staff's failure to heed warnings and their failure to send David and Gurule back to jail, Jewett was severely injured.

26. Jewett was thus incarcerated under conditions posing a substantial risk of serious harm.  Defendants acted with deliberate indifference to Jewett's plight.  Specifically, they had actual knowledge of the threats to Jewett's safety and Jewett pleaded with them to take measures to protect him.  Instead, defendants disregarded this excessive risk to Jewett's health and safety.

27. Defendants' actions and failure to act resulted in injury to Jewett, and as a result defendants are liable to plaintiff for damages in an amount to be proved at trial.

28. Pursuant to the provisions of 42 U.S.C. Section 1988 plaintiff is entitled to judgment against the defendants for his costs and attorneys fees incurred in bringing this action.

### SECOND CLAIM FOR RELIEF
(42 U.S.C. Section 1983 - Failure Properly to Train)

29. Plaintiffs restate the allegations contained in paragraphs 1 - 28, above, as if fully set forth herein.

30. Defendants Cooke and the Sheriff's Department had a policy of training the staff at the Centennial facility.

31. Defendants Cooke and the Sheriff's Department failed properly to train the staff who handled the situation.  The staff should have been trained to send back to jail inmates who were harassing and threatening other inmates.  Also, the staff members at Centennial told Jewett that Centennial's policy was that they could take no action to protect him until after "something happens."  In other words, the staff members believed that they could take no action to prevent future violence against an inmate until after that inmate had been assaulted at least once.  Finally, the staff should have been trained not to leave an inmate alone in a room with another inmate who had just attempted to assault

him, as Bill did when he left Jewett along with Gurule.

32. The Centennial staff's failure to send Gurule back to jail when he was harassing and threatening Jewett occurred as a result of the failure of defendants Cooke and the Sheriff's Department properly to train the Centennial staff and resulted in injury to Jewett in violation of his rights protected by the Eighth Amendment to the United States Constitution.

33. The Centennial staff's belief that they could take no action to protect Jewett until after he had already been assaulted was a direct result of the failure of defendants Cooke and the Sheriff's Department properly to train the Centennial staff and resulted in injury to Jewett in violation of his rights protected by the Eighth Amendment to the United States Constitution.

34. Bill's action in leaving Jewett alone with Gurule when it was apparant that Gurule intended to do violence to Jewett occurred as a result of the failure of defendants Cooke and the Sheriff's Department properly to train Bill and resulted in injury to Jewett in violation of his rights protected by the Eighth Amendment to the United States Constitution.

35. Defendants Cooke and the Sheriff's Department are liable to Jewett for damages in an amount to be proved at trial for failure properly to train the Centennial staff, which failure to train was done with deliberate indifference to Jewett's rights.

36. Pursuant to the provisions of 42 U.S.C. Section 1988 plaintiff is entitled to judgment against the Defendants Cooke and Sheriff's Department for its costs and attorneys fees incurred in bringing this action.

WHEREFORE, plaintiff respectfully requests this court to award him compensatory damages in an amount to be proved at trial plus an award of costs and attorneys fees incurred in bringing this action.

**PLAINTIFF DEMANDS A TRIAL TO A JURY OF ALL CLAIMS SO TRIABLE.**

Dated this 11th day of August, 2005

/s/ Barry K. Arrington
_____

Barry K. Arrington
Arrington & Associates, P.C.
5310 Ward Road, Suite G-07
Arvada, Colorado  80002
Voice:  (303) 205-7870
Fax:  (303) 463-0410
Email:  barry.arrington@comcast.net

Plaintiff's Address:
2842 16th Avenue
Greeley, Colorado  80631